**E. Conn HERMANN and Connie M. Hermann, Appellants–Plaintiffs,**

v.

**David G. YATER and Pattee L. Yater, Appellees–Defendants.**

**No. 30A04–9311–CV–408.**

Court of Appeals of Indiana, Fourth District.

March 29, 1994.

Rehearing Denied May 11, 1994.

Jonathan E. Palmer, Matchett, Arnold & Palmer, Shelbyville, for appellants.

Raymond S. Robak, Robak & Murphy, Greenfield, for appellees.

RILEY, Judge.

## STATEMENT OF THE CASE

Plaintiffs–Appellants E. Conn Hermann and Connie M. Hermann (collectively the Hermanns) appeal from an order of the Hancock Circuit Court granting summary judgment in favor of the Defendants–Appellees David G. Yater and Pattee L. Yater (collectively the Yaters). We affirm.

## ISSUE

We re-state the issue as follows: Whether the trial court erred in granting summary

judgment against the Hermanns on the issues of actual fraud and constructive fraud.

## FACTS AND PROCEDURAL HISTORY

The Yaters are owners and developers of the Hickory Hills Subdivision in Greenfield, Indiana. On or about June 21, 1990, the Hermanns entered into a contract with the Yaters to purchase an unimproved parcel of real estate in the subdivision.[1] At the time of closing the Hermanns were not ready to begin building.

Approximately two years after the closing, the Hermanns applied to the Hancock County Board of Health for a building permit, including a septic permit. Their application was denied upon a determination that based on the soil borings that had been done, the lot was not suitable for a septic system due to an unacceptable substance in the soil. Essentially, the Hermanns had plans drawn up for their new home, closed on the sale of their old home, and then discovered that their lot was not suitable for a septic system and therefore that they could not build on it.

The Hermanns initiated this action by bringing suit against the Yaters alleging constructive fraud in Count I and actual fraud in Count II. The essence of the Hermanns' complaint is that they were denied a septic permit for the property after representations were made to them by the Yaters, through their agent, that a home could be built and a septic system maintained on the land. The Yaters filed a motion for summary judgment.[2] After hearing the testimony of one witness and the argument of counsel, the trial court granted the motion by written order. The Hermanns appeal. Additional facts will be provided as necessary.

## STANDARD OF REVIEW

■ Summary judgment is an appropriate disposition if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Ind.Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. T.R. 56(C); *Fawley v. Martin's Supermarkets, Inc.* (1993), Ind.App., 618 N.E.2d 10, 12, *trans. denied.*

■ Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing: (1) that there are no genuine issues of material fact; and (2) that the movant is entitled to judgment as a matter of law. *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1101, *reh'g denied.* Only when these two requirements are met does the burden shift to the non-moving party to set forth specifically designated facts showing the existence of a genuine issue. T.R. 56(E); *Id.* at 1101.

■ On appeal we are bound by the same standard as the trial court and we must consider only those matters which were designated at the summary judgment stage. T.R. 56(C); *Campbell v. Criterion Group* (1993), Ind.App., 613 N.E.2d 423, 428, *on reh'g* (1993), Ind.App., 621 N.E.2d 342. On appeal however, the party that lost in the trial court has the burden to persuade the appellate tribunal that the trial court erred. *Id.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. T.R. 56(C); *Fawley,* 618 N.E.2d at 12. Our role is to closely scrutinize the trial court's determination in order to assure that the Hermanns were not improperly denied their day in court. *Campbell,* 613 N.E.2d at 428.

## DISCUSSION AND DECISION

■ The issue before the trial court and the issue before us is whether the allegations contained in the Hermanns' complaint present any genuine issues of material fact. The complaint contained two counts: Count I alleging constructive fraud and Count II alleg-

---

1. Specifically, lot 19 located at 7437 East Hill Drive, Hickory Hills Addition, Center Township, Hancock County, Greenfield, Indiana.

2. The Yaters have also counterclaimed, but the counterclaim is not at issue here. Therefore, the summary judgment entered by the trial court is a judgment on less than all the issues.

ing actual fraud. The elements of constructive fraud are as follows:

> (1) a duty owing by the party to be charged to the complaining party due to their relationship, (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reliance thereon by the complaining party, (4) injury to the complaining party as a proximate result thereof, and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Block v. Lake Mortgage Co., Inc.* (1992), Ind. App., 601 N.E.2d 449, 451, *reh'g denied* (quoting *Pughs' IGA v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1197, *reh'g denied, trans. denied* ). The elements of actual fraud are as follows:

> (1) a material misrepresentation of past or existing fact by the party to be charged which (2) was false, (3) was made with knowledge or in reckless ignorance of the falsity (4) was relied upon by the complaining party, and (5) proximately caused the complaining party injury.

*Id.*

In the present case, the parties designated to the trial court the portions of the record upon which they relied in support of and in opposition to summary judgment. The trial court relied on the following designated materials in determining that the Yaters were entitled to judgment as a matter of law: the deposition of Mr. Hermann, the deposition of Mrs. Hermann, the affidavit of Dr. David Yater, the affidavit of Rick Roudebush, the testimony of Roger Wilson, the affidavit of Mr. Hermann, the affidavit of Amy Klene and the arguments of counsel. We look to these designated portions of the record in determining whether to affirm or reverse the trial court's grant of summary judgment.

To obtain summary judgment as to the constructive fraud or fraud claim, the Yaters need only show that the undisputed material facts negate at least one element of the Hermanns' claim. *Hardy v. South Bend Sash & Door Co.* (1992), Ind.App., 603 N.E.2d 895, 901, *reh'g denied, trans. denied* (citing *Sanders v. Townsend* (1987), Ind.App., 509 N.E.2d 860, 862, *reh'g denied, trans. denied,* Aff'd in part, Vacated in part, *Sanders v. Townsend* (1991), Ind., 582 N.E.2d 355). The Yaters contend that there was no false representation of past or existing fact and therefore there is no fraud or constructive fraud. Some additional facts are necessary.

The proposed subdivision was granted final approval by the Hancock County Planning Commission in May, 1987. Prior to final approval, the plans were submitted and approved by the Technical Review Committee. This committee was charged with verifying compliance with the rules and regulations then in effect in Hancock County, including the Hancock County Board of Health. In 1988, after the Yaters had begun selling lots in the subdivision, they were notified by the State Board of Health that borings were necessary before any future septic permits would be granted in the subdivision. In compliance with this request, the Yaters secured the services of William Strange, P.E., to conduct the borings in accordance with the Board of Health rules in effect at the time. The results of the borings indicated that there were no unsuitable soils on the portions of the lots designed to accommodate septic systems, including lot 19.

Prior to the August, 1990, closing on the Hermanns' lot, the Yaters had sold 19 lots and homes were being constructed on these lots. The Yaters had personally constructed 3 homes, and received septic permits for each. In fact, the Yaters resided in the home located on lot 20 which lies immediately west and adjacent to lot 19 from February, 1990, to October, 1992. Further, prior to the Hermanns' purchase of lot 19, a home had been constructed on lot 18, which adjoins and lies immediately east of lot 19.

The record reveals that on December 21, 1990, the State Board of Health promulgated new rules and regulations relating to the installation of septic systems throughout the State. Apparently, the new rules redefined the method for analyzing soils and the standard was changed dramatically. Sometime after April, 1991, when the Hancock County Board of Health adopted the new rules, the Yaters were notified that septic systems

would not be approved on the remaining unsold lots.

The Hermanns submitted their application in July, 1992, and their application was denied based on the results of the new soil borings and the new rules.[3] Mr. Hermann then attended a board meeting of the County Board of Health and asked how the subdivision was approved and his lot available for sale, yet his application denied. He was informed that his application was denied because the soil borings taken from lot 19 contained peat, which is an unacceptable substance for a septic system.

The premise of the Yaters' argument is that had the Hermanns made application for the installation of a septic system prior to the effective date of the new rules, such application would have been approved based on the

original soil borings submitted by William Strange in 1988.[4] Therefore, based on the Yaters' knowledge in August, 1990, no false representations were made.

The subdivision contains 47 lots. Prior to the initiation of this suit, 28 lots had been sold, and 18 lots remained unsold and of the unsold lots, 11 will not be approved for septic permits per the Hancock County Board of Health. The Yaters have taken issue with the decisions of the Board of Health. The Yaters concede that both they and the Hermanns have suffered damage; however, they contend that the damage is the fault of the Hancock County Board of Health.[5]

The Hermanns contend that the Yaters, through their agent, represented that the lot was an acceptable home site and suitable for a septic system.[6] The Hermanns seem to

---

3. The Hermanns were informed by Amy Klene of the Hancock County Board of Health that they needed to have borings done in order to make a determination on the application for a finger system on the lot. After receiving notice of the necessity for borings, Mr. Hermann contacted Dr. Yater and asked him if he had any objection to a septic field located in the rear of the home. Yater responded that that was not an issue for him. Pursuant to this exchange, Hermann told the Board of Health that he was planning to place the septic field behind the house, between the house and the lake. (R. 166). The Hermanns later received notice of rejection of their application by phone from Amy Klene. She said that "the soil borings that had been done showed a substance in the soil that was not acceptable for septic systems, and that she would not approve the septic system on that property." (R. 156).

4. Specifically, the Yaters contend that the Hermanns could have secured a permit up until April, 1991, when the Hancock County Department of Health adopted the new State Board of Health rules and regulations. In fact, the Yaters contend that a permit could have been secured in June, 1992, for a septic system placed in front of the home. Mr. Hermann said that he spoke with Amy Klene regarding placing the septic system in the front yard and that she told him that the house would have to be further than half way back on the lot. This was not acceptable to the Hermanns because the house would be too close to the lake and they would be left with very little back yard. (R. 167).

5. In fact, in their memorandum in support of summary judgment, the Yaters state that their

counsel spoke with the Hermanns' counsel prior to the commencement of this litigation in an attempt to explain the unfortunate circumstances; i.e. that it was the Board of Health that created the problems both for the Hermanns because they could not build on their lot, and for the Yaters because they now owned 11 unsold worthless lots.

6. In Hermann's deposition, when asked where he saw a misrepresentation, he explained that he understood that the standards had changed between the time the subdivision was approved and the time of his application, however that he finds a misrepresentation in that the original 1988 soil borings were approved by the Board of Health, and that the Hermanns' 1992 borings contained an unacceptable substance. Hermann argues that the substance would also have been unacceptable in 1988. Hermann concedes that the boring results reported conformed with the law in place at the time, but he does not concede that the borings themselves complied. (R. 186–189). Hermann seems to suggest that the 1988 borings or results had been tampered with. He says that the substance found in his borings was not present or was not reported to be present in the initial borings. (R. 183). Specifically, the relevant deposition testimony is as follows:

 Q. Well if it was not acceptable five years later, why was it approved? Why didn't they reject it in the very first instance.
 A. That's a good question and I wish I had an answer to.
 Q. So what did this man, Dr. Yater, have to do with this representation? I mean he had nothing to do with that. He submitted what was required five years earlier and it was accepted and approved. Now what did he misrepresent to you?

suggest that the Yaters possessed knowledge that the Hermanns would be unable to obtain a septic permit. Common sense dictates that the Yaters would not have pursued their plans to develop the addition had they known in August, 1990, or before, that 11 of their 47 lots platted and approved for development could not be developed.[7]

 For the Hermanns to overcome summary judgment, they must show that the Yaters knew on or prior to August 3, 1990, that a septic permit could not be secured by the Hermanns. The undisputed facts indicate that all the Yaters knew on August 3, 1990, is that soil borings had been previously conducted in 1988 on lot 19 and those results indicated that no unsuitable soils were found. Therefore, the representations were true at the time they were made, and the cause of these problems appears to be the subsequent change in the law. Fraud cannot be premised on a future act, no less a future act totally outside the control of the Yaters. We find no evidence of the existence of a material misrepresentation of past or existing fact, and therefore the Yaters have satisfied their burden of negating at least one element of the Hermanns' claim. *See Hardy*, 603 N.E.2d at 901.

Clearly, the Hermanns have suffered some misfortune due to the circumstances; however, the Yaters cannot be held accountable for this misfortune. Indeed, the Yaters have suffered misfortune of their own stemming from the same set of circumstances.

> A. That's what I'd like to find out. He represented that the property was buildable and my discovery with my soil borings was that it is not and was not acceptable at any time.
> (R. 189–190).
>
> * * * * * *
>
> Q. If you had made application to build your home in September, October, November and December, 1990, you could have been issued a permit to build that home there.
> A. My answer is conditional. My knowledge is yes, I could have had I not done soil borings and used the original soil borings.
> (R. 192).
>
> * * * * * *
>
> Q. And what did Amy [Klene] tell you, that [the State Board of Health] changed the rules in 1990 and [ ] septics are no longer acceptable

*CONCLUSION*

Based on the foregoing, the trial court's grant of summary judgment in favor of the Yaters and against the Hermanns on their claim of fraud and constructive fraud is affirmed in all respects.

Judgment affirmed.

CHEZEM and RUCKER, JJ., concur.

> [ ] in that subdivision? Isn't that what she told you?
> A. No. She spoke to me about my lot and specifically about the content in my soil borings and how that relates to the law today and how that relates to the law as it's been on the books for quite some time and that that soil or that content in that soil is unacceptable today and was unacceptable through the whole history of the Hickory Hills subdivision.
> (R. 192–193).

7. It is undisputed that the Yaters are the owners of 11 undeveloped lots which the Board of Health has indicated will not receive permits when requested. However, the Yaters did not become aware of this information until after April, 1991, when Hancock County adopted the new rules.