Steve **SHEWMAKER**, Appellant–Plaintiff,

v.

Gerald **ETTER**, Appellee–Defendant,

and

**William J. Franzmann, Non-appealing Defendant.**

No. 49A02–9707–CV–462.

Court of Appeals of Indiana.

April 3, 1998.

See also, 659 N.E.2d 1021.

James R. Fisher, Ice Miller Donadio & Ryan, Indianapolis, for Appellant–Plaintiff.

Mark R. Smith, Smith & Bemenderfer, Indianapolis, for Appellee–Defendant.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Steve Shewmaker appeals the trial court's grant of summary judgment in favor of Gerald Etter in Shewmaker's intentional tort action against Etter.

We affirm.

### ISSUE

Whether the trial court erred in granting Etter's summary judgment motion.

### FACTS

In the mid to late 1980's, Gerald Etter purchased a 14 acre parcel of property which abuts State Road 44 and Hess Road in Morgan County. Etter purchased the property to pasture livestock and for family recreational activities such as horseback riding, two and four wheeler riding, and cookouts. When Etter purchased the property, it was surrounded by a wire fence which was in disrepair. Etter immediately began replacing the wire fence with a wooden fence.

One edge of Etter's property abuts a sharp curve on S.R. 44. During the 1980's, approximately 12 motorists failed to successfully negotiate the curve, drove onto Etter's property and hit his wooden fence, often knocking it down and letting Etter's horses out of the pasture. Sometime prior to 1988, Etter contacted a representative from the State Highway Department and requested that the department put up signs to warn motorists that they were approaching a curve in the road. The department erected one warning sign.

In 1988, Etter constructed a metal guardrail painted with reflective paint on his property at the curve. Etter had two purposes for constructing the guardrail. First, he believed that the presence of the guardrail would warn motorists to slow down so that they could successfully negotiate the curve without hitting the guardrail. Second, Etter wanted to protect his family and livestock from potential injury caused by vehicles knocking down the wooden fence and entering his property.

In his deposition, Etter stated that he did not intend for the guardrail to cause injury to motorists. When asked whether he was aware that if a vehicle hit the guardrail, the vehicle would be damaged, Etter responded that "one would think so." (R. 70). When asked whether he was aware that if a motorcycle struck the guardrail, "that would cause a big problem for the motorcyclist," Etter responded that he "would think so." (R. 70). During the first year that the guardrail was in place, approximately five to ten motorists struck it. Etter was unaware of any injuries suffered by these motorists.

On May 17, 1990, 27 year-old Steve Shewmaker, who was riding a friend's motorcycle 10 to 30 miles per hour over the posted 50 mile per hour speed limit, and who had a blood alcohol content of .186, left the road, crashed into the guardrail, and sustained serious and permanent injuries. Shewmaker had lived in the area for most of his life and had previously driven motor vehicles, including motorcycles, around the curve on numerous occasions without any problems.

On October 31, 1991, Shewmaker filed a complaint against Etter wherein Shewmaker alleged that Etter was negligent in the design, construction and placement of the guardrail. On May 12, 1992, Shewmaker filed an amended complaint against Etter and William Franzmann, the owner of the motorcycle which Shewmaker was riding at the time of the accident. The complaint alleged negligence, intentional tort, and enhanced injury claims against Etter, and a

negligent entrustment claim against Franzmann.

On January 10, 1997, Shewmaker filed his second amended complaint which dropped Franzmann from the suit and dropped the negligence count against Etter, thereby leaving only the intentional tort and enhanced injury claims against Etter. On January 15, Shewmaker filed a motion for partial summary judgment on the intentional tort claim, and in February, Etter filed a cross motion for summary judgment on the intentional tort claim. On March 26, 1997, the trial court issued a written opinion wherein it granted summary judgment in favor of Etter.

## DECISION

Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind.Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that moving party is entitled to judgment as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 514 (Ind.Ct.App.1994), *reh'g denied.* If the moving party meets these two requirements, the burden shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial. Ind.Trial Rule 56(E); *Hermann,* at 514.

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Id.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Fawley v. Martin's Supermarkets, Inc.,* 618 N.E.2d 10, 12 (Ind.Ct.App.1993), *trans. denied.* On appeal, a trial court's grant of summary judgment is "clothed with a presumption of validity." *Department of Revenue v. Caylor–Nickel Clinic,* 587 N.E.2d 1311, 1312–13 (Ind. 1992).

Shewmaker argues that the trial court erred in granting summary judgment in favor of Etter on Shewmaker's intentional tort claim. Specifically, he posits that the material facts in this case "require the conclusion that Mr. Etter acted with either the specific intent or with the knowledge that his construction of the barrier was 'substantially certain' to result in a harmful or offensive contact between the constructed barrier and the motorists which left the road...." Shewmaker's Reply Brief, p. 16. We disagree.

As we have said before, quoting Dean Prosser, regarding the concept of intent in tort law:

[T]he mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief of [sic] consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but is not classified as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a certainty.

*Cox v. American Aggregates Corp.,* 580 N.E.2d 679, 684 (Ind.Ct.App.1991), *trans. denied; National Can Corp. v. Jovanovich,* 503 N.E.2d 1224, 1233 (Ind.Ct.App.1987), *reh'g denied, trans. denied; Blade v. Anaconda Aluminum Co.,* 452 N.E.2d 1036, 1038 (Ind. Ct.App.1983).

Shewmaker argues that the trial court erred in granting Etter's summary judgment motion because the designated evidence reveals as follows:

Mr. Etter admitted that his construction of a barrier was for the specific and exclusive purpose of creating a sudden and violent collision, in which an out of control vehicle traveling at highway speeds would be brought to a sudden and complete stop within two feet of impact of the barrier, in order to prevent the vehicle from knocking the horizontal boards off of Mr. Etter's homemade fence. Mr. Et-

ter acknowledged that he was "certain" that vehicles would strike his barrier. That was its sole purpose. Its history both before and after it was erected confirmed Mr. Etter's expectation. Mr. Etter admitted that he intended to force vehicles occupied by human beings to come to a violent and sudden stop as a result of collision. His sole defense to the battery allegation is to assert that he never thought about, or cared about, whether the occupants of these violently stopped vehicles would sustain injury, or the extent of the injury they would sustain.

Shewmaker's Brief, p. 24.

Shewmaker has offered no citation to the record to support his allegations, and our review reveals none. Rather, our review of the designated evidence reveals that Etter had two purposes for constructing the guardrail painted with reflective paint. First, he believed that the presence of the guardrail would warn motorists to slow down so that they could successfully negotiate the curve without hitting the guardrail. Second, Etter wanted to protect his family and livestock from potential injury caused by vehicles knocking down the wooden fence and entering his property.

In his deposition, Etter stated that he did not intend for the guardrail to cause injury to motorists. When asked whether he was aware that if a vehicle hit the guardrail, the vehicle would be damaged, Etter responded that "one would think so." (R. 70). When asked whether he was aware that if a motorcycle struck the guardrail, "that would cause a big problem for the motorcyclist" Etter responded that he "would think so." (R. 70). Viewing the evidence in the light most favorable to Shewmaker, we hold that the evidence as a matter of law fails to show that Etter had an actual intent to cause the harm complained of. Therefore, the evidence fails to show the necessary intent for an intentional tort. *See Cox, National Can.*

Affirmed.

STATON and RUCKER, JJ., concur.