# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 26 2015, 7:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Julie J. Havenith
Travelers Staff Counsel Office
Merrillville, Indiana

## I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| White County Sheriff John Roberts, White County Commissioners, John Heimlick, Ronald Schmierer, and Steve Burton,<br><br>*Appellants-Defendants,*<br><br>v.<br><br>Chris and Connie Luthi,<br><br>*Appellees-Plaintiffs* | June 26, 2015<br><br>Court of Appeals Case No. 37A03-1501-CT-33<br><br>Appeal from the Jasper Circuit Court.<br>The Honorable John D. Potter, Judge.<br>Cause No. 37C01-0906-CT-291 |

**Baker, Judge.**

White Country Sheriff John Roberts and White County Commissioners John Heimlick, Ronald Schmierer, and Steve Burton (collectively, the appellants) appeal the trial court's denial of summary judgment regarding Chris and Connie Luthi's negligence claim. The appellants argue that, as the Luthis failed to file a response to their summary judgment motion, there were no genuine issues of material fact. They also maintain that the Luthis failed to prove that the Sheriff breached a duty or that their damages were caused by the Sheriff's negligence. Finding that the appellants' motion for summary judgment failed to establish that there were no issues of material fact regarding Sheriff Robert's negligence, we affirm and remand for further proceedings.

## Facts

The facts as supplied by the appellants in their motion for summary judgment are as follows:[1]

> Plaintiff Chris Luthi was arrested on Friday, June 8, 2007 after he was stopped by the Indiana State Police. Plaintiff had started drinking vodka at his office at 8:00 a.m. that day, left his office at approximately 10:30 a.m. and drove to a liquor store approximately 16 miles away. When Plaintiff arrived at the liquor store, they refused to sell him anything. Plaintiff came out of the liquor store and a person who had called 911 was parked behind him. The 911 caller told Plaintiff not to drive and Plaintiff believes he told him to "kind of get screwed." Plaintiff was then pulled over approximately 5 miles later by

---

[1] We use the facts as supplied by the appellants in their motion for summary judgment because—as will be discussed below—the Luthis failed to file response to the appellants' summary judgment motion. Therefore, we accept the appellants' designated materials as true. *See Templeton v. City of Hammond*, 679 N.E.2d 1368, 1371 (Ind. Ct. App. 1997) (finding that when the non-movant does not come forward with evidence in opposition to the moving party's materials, we will accept the moving party's designated materials as true).

the Indiana State Police. After the State Police pulled him over, they asked him if he would take a Breathalyzer and Plaintiff refused. Plaintiff was then taken by the State Police to the hospital where a blood draw revealed a blood alcohol content of .49. After two hours, he was released from the hospital and taken to the White County Jail.

On June 8, 2007, Plaintiff claims that he started having trouble with balance and walking. However, Plaintiff did not try to get anyone's attention at the jail other than to ask to make a phone call. Plaintiff testified that he did not tell anyone at the jail that he was having these problems because he believed it was from the alcohol. Other than problems with balance and walking, Plaintiff was not having any other problems other than not thinking clearly, which he also attributed to the alcohol.

Plaintiff slept approximately 8 hours that night and was then moved to an individual cell late or [sic] evening the next day, Saturday June 9, 2007. He was woken up when he was brought breakfast at 5:00 a.m. Plaintiff ate his breakfast and did not tell the person who brought him his breakfast that he was having a problem walking, with his balance, with thinking or any physical problems. Between 5:00 a.m. and lunch at noon, he did not try to get anybody's attention in the jail because he was sleeping. After lunch, someone came and took Plaintiff to an individual cell, and Plaintiff testifies that he told the person he had a problem and it was not just alcohol. Plaintiff states that he told the person that he could not walk or stand up. Plaintiff did not tell the person that he could not feel his left leg. Plaintiff then asked the person for books and told him he wanted to make a phone call, to which the person responded that he would be back and allow him to do that. Plaintiff cannot recall saying anything else to this person. Plaintiff did not ask that person for medical assistance. Plaintiff states that the person then left and came back a couple of hours later with the books. When the person returned with the books, he told Plaintiff that he could make a phone call. Plaintiff did not tell the person anything or say anything to him about his problem when he returned with the books.

Plaintiff then went approximately 40 feet to [sic] from his cell to the phone, without help from anyone. Plaintiff claims that he was holding onto the walls but was not crawling on the floor as he went to the phone. Plaintiff claims that he fell halfway to the phone but managed to get back up on his own. Plaintiff believes that a female working at a

desk saw him fall and indicated to him that his wife had already called. Plaintiff testified that he "thanked her for letting me struggle all that way before she told me that, so I could struggle all the way back." He indicated to her that she could have told him that before he went all the way to the phone and fell, but did not ask the person for medical assistance or tell her he was having any problems. Plaintiff did not make a phone call based on his belief that his wife knew where he was. Plaintiff made his way back to his cell on his own the same way he had gone to the phone, by holding onto the wall and walking along.

Plaintiff states that when he returned to his cell, approximately 6:00 p.m. on June 9, 2007, he [sic] the jailer that let him into his cell that he was "just falling down." He told the jailer [sic] was that there was something wrong because he could not stand up or walk and it was a struggle to get anywhere to do anything, and that he had no balance. Plaintiff did not tell the jailer that he was having numbness or that he could not feel his leg. The jailer did not have to help him into his cell, and Plaintiff made it in the cell. Prior to that, Plaintiff had eaten dinner and drank an 8-ounce cup of juice or punch. After he returned to his cell, Plaintiff did not try to get anyone's attention on June 9, 2007. Plaintiff slept the night of June 9, 2007 and was sleeping when the person came in at 5:00 a.m. the next morning and woke him up with breakfast.

Plaintiff did not talk to the person that brought him his breakfast. After breakfast on June 10, 2007, Plaintiff read for a while and then his wife bailed him out at approximately 11:00 a.m. Plaintiff read an entire book between the time the jailer brought him books on June 9 and June 10.

Plaintiff claims that he told a young guy who came to his cell to have him change clothes at approximately 9:00 a.m. on June 10 that he had no balance and could not walk. Plaintiff was moved back to the "drunk tank" and walked there unassisted by "groping the walls." Plaintiff was able to put his own clothes on himself.

At some point, Plaintiff was brought a wheelchair and taken to be fingerprinted, but did not tell any of the people involved in fingerprinting him that he was having any problems. Plaintiff did not need any assistance getting into the wheelchair. Plaintiff was then able to fill out forms that were given to him.

Plaintiff claims that when he was released from the cell, the door was opened and he was helped onto a gurney and taken out where his wife and friends helped him to the car. He then claims he was taken immediately to the hospital from the jail.

Appellants' App. p. 21-26 (internal citations removed).

[3] Following these events, on June 5, 2009, the Luthis filed their complaint, alleging that—due to the appellants' negligence in failing to provide adequate supervision and medical care—Chris Luthi suffered permanent damages when he suffered a stroke while incarcerated. On September 22, 2014, the appellants filed their motion for summary judgment. The Luthis failed to file a response to the appellants' motion or to timely file a request for more time to file.

[4] The trial court held a hearing on the summary judgment motion on November 17, 2014. That same day, the trial court issued an order granting the appellants' motion for summary judgment as to the White County Commissioners, but denying the appellants' request for summary judgment as to Sheriff Roberts. The appellants' motion for an interlocutory appeal was granted on November 14, 2014.

# Discussion and Decision

## I. Standard of Review

The appellants argue that the trial court erred when it denied their motion for summary judgment as to Sheriff Roberts. They argue that, as the Luthis failed to file a response to their motion for summary judgment, there are no genuine issues of material fact remaining. At the outset, we note that the Luthis have

not filed an appellee's brief. In such a situation, we do not undertake the burden of developing arguments for the appellee. *Hill v. Ramey*, 744 N.E.2d 509, 511 (Ind. Ct. App. 2001). We apply a less stringent standard of review with respect to showings of reversible error, and we may reverse the lower court if the appellant can establish prima facie error. *Id.* Prima facie, in this context, is defined as "at first sight, on first appearance, or on the face of it." *Id.*

[5] In addition, when we review the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010). Summary judgment is appropriate only where the evidence shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party, and all doubts concerning the existence of a material issue must be resolved against the non-moving party. *Id.*

[6] When reviewing summary judgment rulings, we may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993). The party moving for summary judgment bears the burden of making a prima facie case showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater*, 631 N.E.2d 511, 513 (Ind. Ct. App. 1994). Once the movant satisfies this burden, the burden shifts to the non-

moving party to produce specifically designated facts showing the existence of a genuine issue. *Id.* Summary judgment is rarely appropriate in negligence cases. *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind. 1996).

## II. Summary Judgment Motion

[7] The appellants argue that the Luthis failed to properly designate material in opposition to their motion for summary judgment pursuant to Indiana Trial Rule 56(C). Therefore, they contend that there are no genuine issues of material fact, and that the Luthis have failed to carry their burden of proof regarding breach of duty and causation.

[8] This Court encountered a similar issue in *Templeton v. City of Hammond*, 679 N.E.2d, 1368, 1371 (Ind. Ct. App. 1997). In that case, the appellant—who alleged that the City of Hammond had been negligent in failing to fix a dangerous defect in the city sidewalk—had failed to file a response to the city's motion for summary judgment. We noted that Trial Rule 56 requires "that the non-movant specifically designate each issue of material fact the non-movant alleges precludes the entry of summary judgment. A non-movant may not simply rest upon the allegations in his pleadings." *Id.* (internal citations removed). Yet, we continued on to explain the matter further:

> However, the amendments to Trial Rule 56 creating the requirement that material issues of fact and supporting evidence in opposition to summary judgment be designated did not alter the structural burden of summary judgment. *Leons v. Bloemker*, 649 N.E.2d 1041, 1044 (Ind. Ct. App. 1995). The party moving for summary judgment still bears the burden of showing that there are no genuine issues of material fact

and that the movant is entitled to judgment as a matter of law. *Id.* If the movant fails to make this prima facie showing, then entry of summary judgment in favor of the movant is precluded, regardless of whether the non-movant did or did not designate facts and evidence in response to the motion for summary judgment. *Id.* (emphasis provided). Hence, because Templeton did not come forward with specific evidence in opposition to the City's materials, we accept the City's designated materials as true. However, the facts designated by the City do not support the entry of summary judgment in the City's favor.

*Id.* Therefore, in the instant case, we also accept the appellants' designated materials as true and proceed to determine if there exists any genuine issue of material fact.

[9] The appellants argue that there are no genuine issues of material fact, and point us to *Halterman v. Adams County Board of Commissioners*, 991 N.E.2d 987 (Ind. Ct. App. 2013). In *Halterman*, Halterman filed suit against the Adams County Sheriff, alleging that the Sheriff's negligence had caused an abscess to develop a Methicillin-resistant staphylococcus aureus (MRSA) infection. *Id.* at 989. A panel of this Court found that summary judgment was appropriate in this cause, because the Sheriff had provided medical evidence in his summary judgment motion that successfully negated the element of causation. *See id.* at 991. ("Summary judgment is appropriate in a negligence action where the defendant demonstrates that the undisputed material facts negate at least one element of plaintiff's claim.") (internal quotations removed).

[10] This case is clearly distinguishable from *Halterman*. Here, the appellants provided no evidence to negate any of the prima facie elements of Luthi's claim. They have entirely failed to show that he *cannot* prove one of these

elements. Rather, the appellants assert that he *did not* prove his negligence claim. Luthi is not required to prove his negligence claim at the summary judgment stage. This argument is an improper attempt to shift the burden of summary judgment onto the nonmovant. As we stated in *Templeton*, whether or not the nonmovant files a response to the moving party's motion for summary judgment, the moving party still bears the burden of showing that there are no genuine issues of material fact. 679 N.E.2d at 1371.

[11] Here, there are clearly genuine issues of material fact to be resolved by the finder of fact. Even when we use the facts as proffered by the appellants in their summary judgment motion, our analysis shows that summary judgment would be inappropriate. It is clear that certain issues of material fact still need to be determined, for example, whether Chris Luthi suffered a stroke while in the care of Sheriff Roberts or whether Luthi told individuals that he was suffering from a medical condition while in the Sheriff's care. These issues of material fact are for the fact finder to determine. Therefore, we do not find that the trial court erred in denying the appellants' motion for summary judgment as to Sheriff Roberts.

[12] The judgment of the trial court is affirmed, and the case is remanded for further proceedings.

Najam, J., and Friedlander, J., concur.