David L. REUTHER, Plaintiff,

v.

SOUTHERN CROSS CLUB, INC., Defendant.

No. IP 90–133–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 7, 1992.

Barry A. Macey, Segal & Macey, Indianapolis, Ind., for plaintiff.

Melvin R. Daniel, Dann, Pecdar Newman Talesnick & Kleinman, Indianapolis, Ind., for defendant.

ENTRY

BARKER, District Judge.

### I. Background

"Just sit right back and you'll hear a tale" of what happened when David Reuther, while vacationing in the Cayman Islands at the Pirates Point Resort hotel, decided to go SCUBA diving—"a fateful trip that started from this tropic port, aboard this tiny ship."[1]

Pirates Point could not accommodate Reuther's desire to go diving and arranged—in accord with an informal standing agreement—for Reuther to dive with a nearby diving company, Southern Cross Club, Inc. Reuther and seven other passengers[2] boarded Southern Cross' dive boat with the intention that the boat would take them to a SCUBA dive site. The dive boat started its short trip to the dive site, but as it entered a channel in the barrier reef that surrounds Little Cayman, "the weather started getting rough" (a huge wave struck the dive boat) and "the tiny ship was tossed." Although ultimately the boat neither "would be lost" nor stranded "on the shore of an uncharted desert isle," Reuther was injured when the wave struck the boat, and instead of a television show, this law suit was born. Reuther filed this action claiming the "skipper" of Southern Cross's dive boat should have waited until the "huge wave" passed before piloting the

---

1. We quote with reference (and apologies) the theme song from the syndicated 1960's sit-com television favorite, "Gilligan's Island":

 Just sit right back and you'll hear a tale,
 a tale of a fateful trip,
 that started from this tropic port,
 aboard this tiny ship.
 The mate was a mighty sailing man,
 the skipper brave and sure,
 five passengers set sail that day,
 for a three hour tour,
 a three hour tour.
 The weather started getting rough,
 the tiny ship was tossed,
 if not for the courage of the fearless crew,
 the Minnow would be lost,
 the Minnow would be lost.
 The ship's aground on the shore of this
 uncharted desert isle,
 with Gilligan, the skipper too.
 The millionaire, and his wife.
 The movie star, the professor and Mary–Ann,
 Here on Gilligan's Isle.

2. "Millionaires" or "movie stars?" We don't know; but the passengers did include "a doctor [a professor] and his wife."

dive boat into the channel; that perhaps the "skipper" was too "brave and sure."[3]

Prior to getting on the Southern Cross dive boat, Reuther had signed a form entitled "Waiver, Release and Indemnity Agreement." The release form stated in part:

FOR AND IN CONSIDERATION of permitting ... David Reuther ...

**TO PARTICIPATE** in SCUBA diving, instruction, snorkeling and any and all watersport activities ... each of the above named persons by their signatures below HEREBY voluntarily releases, discharges, waives and relinquishes SCC ... from any and all claims or causes of action for personal injury, property damages, wrongful death however caused and for himself ... and hereby releases, waives, discharges and relinquishes any action ... whether arising from the negligence of any such persons or otherwise....

**EACH OF THE UNDERSIGNED PERSONS** acknowledges that he or she has read the foregoing and is fully aware of the potential dangers incidental to SCUBA diving, instruction or snorkeling and is aware of the consequences of signing this document....

**EACH OF THE UNDERSIGNED PERSONS** acknowledges ... that SCC does not maintain liability insurance for claims arising from SCUBA or snorkeling activities....

**I thoroughly understand that SCUBA diving is a sport that necessitates that the individual be in good health without any physical ailments, disabilities, or abnormalities. Specifically, 1) Asthma 2) Bronchitis 3) Epilepsy 5) Most Medications 6) Recent Surgery 7) Any Cold or Flu within the last 30 days constitute reasons NOT to SCUBA dive. I also understand that these factor can lead to lung-overexpansion injuries even when all diving functions are performed 100% perfectly. I also understand that diving injuries necessitate immediate and expensive emergency treatment; and I agree that such treatment, if required, would be at my own expense. My signature below indicates that I understand the above and that these factors (listed 1–7) do NOT apply to me.**

Reuther claims that he signed the form quickly, that he did not get a copy of the signed form, that no one insisted that he read the form, and that no one explained the purpose or scope of the release. Reuther claims he understood the form to concern only the hazards of an actual SCUBA dive.

Southern Cross has moved for summary judgment arguing that Reuther released it from liability by signing the release form. Reuther objected to that motion, and Southern Cross replied to Reuther's response. Based on these filings, this court DENIES Southern Cross' motion for summary judgment.

## II. Discussion

■ Indiana's conflict of law rules, *see Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), instruct that the traditional rule of *lex loci delicti* serves well when "the place of the tort [is] significant and the place with the most contacts." *Bencor Corp. v. Harris,* 534 N.E.2d 271, 272 (Ind.Ct.App. 1989); *see Hubbard Manufacturing Co., Inc. v. Greeson,* 515 N.E.2d 1071 (Ind. 1987). Here, the place of the tort is significant, as well as the place with the most contacts. This court therefore looks to the laws of the Cayman Islands to determine the validity and scope of the release form. *See Secon Service System, Inc. v. St. Joseph Bank & Trust Co.,* 855 F.2d 406 (7th Cir.1988); *see also Bellew v. Byers,* 272 Ind. 37, 396 N.E.2d 335 (1979); *Bittner*

---

**3.** Reuther, a resident of New York, filed this action against Southern Cross, an Indiana corporation, in this court based on diversity jurisdiction. 28 U.S.C. § 1332(a)(1).

**1342**

*v. Little,* 270 F.2d 286, 288 (3rd Cir.1959); *Hayden v. Ford Motor Company,* 278 F.Supp. 267 (D.Mass.1967).

The Cayman Islands is a British Dependent Territory. *Wilson v. Humphreys (Cayman), Ltd.,* 916 F.2d 1239 (7th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991); British Nationality Act 1981, 31 Halsbury's Statutes 172 (4th ed. 1987). The United States does not regard the Cayman Islands as an independent sovereign. *Reid–Walen v. Hansen,* 933 F.2d 1390 (8th Cir.1991); *see* The World Factbook 1989 at 56. The Cayman Islands is "administered by a governor who is appointed by the British monarch," and "the United Kingdom represents Caymanian diplomatic interests and is responsible for the Cayman Islands' military defense." *Wilson,* 916 F.2d at 1242. British law, absent an applicable Cayman statute, controls in the Cayman Islands. *See Wilson,* 916 F.2d at 1242; 6 Halsbury's Laws of England (4th ed. 1974) § 1118 fn. 1. Finding no Cayman enactment on point, this court turns to the English common law; the parties agree that English common law is the proper law to be applied in this case.

"The normal rules as to the construction of written contracts apply to a release." 9 Halsbury's Laws of England 412 (4th ed. 1985). "Surrounding circumstances," "recitals," and "context" help "determine the object and purpose of the document [release]." *Id.; Lamport and Holt Lines Ltd. v. Coubro and Scrutton (M & I), Ltd.,* 2 Lloyd's Rep. 42, 45 (1982) ("The duty of the court is to divine from the words used what, or the circumstances in which they were used, the parties must have intended by the bargain"). If the rules of construction result in or fail to clarify ambiguities, the doctrine of *verba chartarum fortius accipiuntur contra proferentem* applies; the "words of a written instrument are to

be construed more strongly against the grantor or maker thereof." Chitty on Contracts § 877 (26th ed. 1989).

 The express wording of the Southern Cross release refers only to "the potential dangers incidental to SCUBA diving, instruction, or snorkeling."[4] In particular, the last paragraph—the one directly above the signature, entirely in bold letters—describes specific dangers that are involved in SCUBA diving ("lung overexpansion") and warns potential SCUBA divers that they must be in "good health without physical ailments, disabilities, or abnormalities." The bolded paragraph further warns that divers must be free from "Respiratory Ailment" so as to minimize the potential for injuries associated with a SCUBA dive—"diving injuries [that would] necessitate immediate and expensive emergency treatment." Nowhere does the release advise of the potential for injury while on the dive boat, nor are respiratory ailments or good health concerns relevant to the dangers of a simple boat ride.

Reuther's affidavit, a "recital," discloses that by signing the release form, he understood that he was agreeing not to sue Southern Cross for injuries that might have occurred in the context of a SCUBA dive:

"I believed that the release form I signed was strictly for the purpose of recognizing the unique risks of scuba diving.... At no time did I acknowledge, intend, or contemplate that the short boat ride merely providing transportation to the scuba dive site would prove to be the real danger. Consequently, I did not contemplate nor intend the release to cover the boat pilot's negligence. I never thought that was the purpose of the release I signed."

**4.** Southern Cross argues that under English common law, the release form phrase "however caused" effectively released it from any and all liability. However, this court interprets that phrase as merely explaining that there are many ways to be injured during a SCUBA dive. Thus, the phrase "however caused" means only that Southern Cross is not liable for injuries, "however caused," that occur in the context of a SCUBA dive.

Based on Reuther's (uncontradicted)[5] recital of his understanding of the scope of the agreement, the absence of any written language in the release about the dangers of the boat ride, and the explicit warnings on the release that refer only to the "potential dangers incident to SCUBA diving," this court considers the scope of the release to be limited to injuries related to a SCUBA dive. However, by including specific dangers or events that may happen in the context of a SCUBA dive, under English common law, the injury on the boat is tantamount to what Lord Morton referred to as an "other head of damage"[6] and not covered under the release. *See Dorset County Council v. Southern Felt Roofing Co. Ltd.,* 46 Build L.R. 96, 9 Tr.L. 96 (1989) ("that by including other events which might occur without fault on the part of any human agent, the draftsman had in mind other heads of damage other than negligence"). The "surrounding circumstances," "recitals," and "context" of the release leads this court to conclude that the "object and purpose" of the release was to waive liability for injuries incurred while SCUBA diving only.

■ Southern Cross argues that the dive boat ride was an integral part of the SCUBA dive experience, and that the release language, "FOR AND IN CONSIDERATION of permitting ... [David Reuther] ... **TO PARTICIPATE** in SCUBA diving," should be read reasonably to constitute a release for negligence that occurred during the dive boat ride. However, this release language is at best ambiguous as to Southern Cross' exposure to liability regarding dive boat negligence; it is not at all clear that the clause, "**TO PARTICIPATE** in

SCUBA diving" incorporates the preparatory boat ride. Because the release is ambiguous in this respect, in accord with the doctrine of *verba chartarum fortius accipiuntur contra proferentem,* this court construes the release strictly against Southern Cross. We cannot state as a matter of law that the release protects Southern Cross from the type of negligence alleged in this litigation.

### III. Conclusion

Accordingly, this court finds that the release form does not protect Southern Cross from liability for injuries that occurred on the boat ride while enroute to the dive site and therefore DENIES Southern Cross' motion for summary judgment.

It is so ORDERED.

---

5. In support of its contention that the scope of the release includes liability for injuries incurred during the boat ride, Southern Cross submitted an affidavit (from the Chairman of Southern Cross) stating that no guest diver is allowed on the dive boat (to go on a dive) without first signing the release form. However, the affidavit does not state what Southern Cross understood as the object, purpose, or scope of the release.

6. Lord Morton's test of other possible heads of damage is not a technical one, "but rather [courts should] ask what liability the parties must have had in their minds." *Churchman v. Lampon,* Queens Branch Division, (Transcript: Association), 3 April 1985.