**Danny Roy MARSHALL and Sherry Marshall, Appellants–Plaintiffs**

**v.**

**BLUE SPRINGS CORPORATION d/b/a Blue Springs Park, Raymond Dickerson, and Cincinnati Diving Center, Inc., Appellees–Defendants**

No. 73A05–9311–CV–432.

Court of Appeals of Indiana, Fifth District.

Oct. 19, 1994.

Earl C. Townsend, III, Townsend & Townsend, Indianapolis, Arnold S. Levine, Law Offices of Arnold S. Levine, Cincinnati, OH, for appellants.

David M. Mattingly, Laura B. Daghe, Ice Miller Donadio & Ryan, Indianapolis, for appellees.

BARTEAU, Judge.

Danny and Sherry Marshall appeal the trial court's grant of summary judgment in favor of Blue Springs Corporation, d/b/a Blue Springs Park, Raymond Dickerson, and Cincinnati Diving Center, Inc. (collectively "Defendants"), on the Marshalls's complaint for negligence. On appeal, the Marshalls raise two issues:

1. Whether the trial court erred in granting summary judgment in favor of Defendants when Defendants failed to designate the evidence relied on in support of their motion for summary judgment; and

2. Whether there is a genuine issue of material fact as to whether the releases were signed under economic compulsion or duress.

Oral argument was held on September 19, 1994. We affirm.

### FACTS

In January, 1991, Danny Marshall enrolled in a scuba diving class offered by Cincinnati Diving Center ("CDC"). At the time he enrolled, he signed a "Student Enrollment Form and Liability Release," which stated:

> In consideration of a deposit of *135.00* paid on ___, I understand that Cincinnati Diving Center,Inc. [sic] is reserving a place for me in a SCUBA diving class which begins on *Jan. 20.* I also understand that should I decide not to participate in the above class I must give Cincinnati Diving Center at least two weeks notice of that decision. Should I fail to give proper notice, I understand I will not receive a refund of my deposit, unless my space can be resold. Scuba diving can be a SAFE and enjoyable sport but proper professional training is a requirement and some risks do exist. I personally am willing to assume ALL risks involved with said course, whether foreseen or unforeseen. I further affirm that I have been well advised and thoroughly informed of the inherent dangers of SCUBA DIVING. Further, I understand that diving with compressed air involves certain risks, injuries or death can occur. I understand and agree that neither Cincinnati Diving Center,Inc. [sic] or its staff may be held liable in anyway [sic] for any occurrence in connection with this diving class that may result in injury or death.

R. 140. The lessons began on January 20, 1991, and ran for eight Sundays. On March 1, 1991, Marshall was required by CDC to sign a "TIC Application Form" ("TIC release") in order to complete the remainder of the course. That form contained a paragraph stating:

**LIMITATION OF LIABILITY**

For in consideration of permitting the above named student to enroll in and participate in diving activities and class instruction of skin and/or scuba diving given by a sanctioned member school of the National Association of Scuba Diving Schools, the undersigned hereby releases, discharges, waives and relinquishes any and all actions or causes of action for personal injury, property damage or wrongful death occurring to him/herself arising as a result of engaging in or receiving instruction in said activity or any activities incidental thereto wherever or however the same may occur and for whatever period said activities or instruction may continue, and the undersigned does for him/herself, his/her estate, and agrees that under no circumstances will he/she or his/her heirs, executors, administrators and assigns prosecute, present any claim for personal injury, property damage or wrongful death against the National Association of Scuba Diving Schools or its member school or

any of its officers, agents, servants or employees for any of said causes of actions, whether the same shall arise by the negligence of any of said persons, or otherwise. IT IS THE INTENTION OF THE ABOVE NAMED STUDENT BY THIS INSTRUMENT, TO EXEMPT AND RELIEVE THE NATIONAL ASSOCIATION OF SCUBA DIVING SCHOOLS AND ITS MEMBER SCHOOL FROM LIABILITY FOR PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE. I also understand and agree that the open water trips which are required for instructional purposes and certification in this course may be conducted at a dive site which is remote and as a result a decompression chamber may not be readily available. I hereby personally assume all risks in connection with said course for any harm, injury or damage which may befall me while I am enrolled as a student of the course, including all risks connected therewith, whether foreseen or unforeseen. I still wish to continue and assume the risk of the absence of a decompression chamber.

R. 141. CDC is a member school of the National Association of Scuba Diving Schools. Marshall's open water dive, a required element of the diving course in order to be certified, was scheduled for August 17, 1991. On August 16, Marshall picked up his rental equipment for the dive and signed a "CDC Rental and Agreement and Release Form" that stated in part: "That lessee uses said equipment entirely at his or her own risk." R. 233. When the Marshalls arrived at Blue Springs Park for Danny's open water dive on August 17, they had to purchase memberships and sign the "Blue Springs Park Membership Application" ("Blue Springs release") before they could enter the park. The front of the application stated:

7. Your signature indicates you are in full agreement with the waiver and release on reverse side.

8. This is fully intended to be a legally binding contract and release. If you have any doubts concerning any aspect of its contents, consult an attorney and do not enter the premises.

R. 235. The reverse side of the application stated:

NOTICE

THIS IS A WAIVER AND RELEASE

WE THE UNDERSIGNED, FULLY UNDERSTAND THE RISK INVOLVED IN SCUBA DIVING, SWIMMING, DIVING, AND OTHER ACTIVITIES IN WHICH WE MIGHT PARTICIPATE AT BLUE SPRINGS, AND ACCEPT ANY AND ALL RESPONSIBILITY FOR OUR OWN SAFETY AND WELFARE WHILE SCUBA DIVING, SWIMMING, DIVING OR PARTICIPATING IN OTHER ACTIVITIES.

WE THE UNDERSIGNED AGREE WITH FULL UNDERSTANDING OF THE RISKS INVOLVED TO RELIEVE, RELEASE, INDEMNIFY AND HOLD HARMLESS BLUE SPRINGS PARK, BLUE SPRINGS CORPORATION, RAYMOND DICKERSON, THE OWNER OF THE REAL ESTATE, AND ANY AND ALL EMPLOYEES, OFFICERS, AND/OR DIRECTORS OF ANY OF SAID INDIVIDUALS OR ENTITIES OF ANY AND ALL RESPONSIBILITY OR LIABILITIES TO THE UNDERSIGNED FOR ANY ACCIDENTS OR MISHAPS WHICH MAY OCCUR WHILE SCUBA DIVING, SWIMMING, DIVING, OR PARTICIPATING IN ANY OTHER ACTIVITIES, AND FROM ANY AND ALL INJURIES OR DAMAGES FORM [sic] RISKS KNOWN OR UNKNOWN.

WE THE UNDERSIGNED UNDERSTAND THERE IS NOT A LIFEGUARD ON DUTY, CLIFF DIVING IS PROHIBITED, AND NO ALCOHOLIC BEVERAGES OR DRUGS ARE PERMITTED.

WHEN SIGNED ON THE FRONT, THE SIGNER ADMITS TO FULL UNDERSTANDING OF THE ABOVE AND AGREES TO NO LEGAL ACTION IN CASE OF ACCIDENT OR MISHAP AND FULLY RELEASE [sic] ALL THE ABOVE PERSONS AND/OR ENTITIES

THEREOF OF ANY LIABILITY OF ANY SORT, BASED IN TORT (PER-SONAL INJURY), CONTRACT, OR OTHERWISE.

I FURTHER ACKNOWLEDGE THAT SCUBA DIVING IS INHERENTLY DANGEROUS AND CAN RESULT IN PERMANENT AND SERIOUS INJURY AND DEATH. I CHOOSE TO ACCEPT AND INCUR THAT RISK.

R. 236. At the entrance to the park, the Marshalls were also required to sign a "sign-in sheet" that stated: "NOTICE: IN SIGN-ING THIS YOU AGREE WITH THE WAIVER AN [sic] RELEASE AS A MEM-BER." R. 234. While preparing for his dive, Danny was on the floating dock used for the dives. While putting on his equipment, he slipped and fell, injuring his knee.

Other facts will be presented as necessary.

### DESIGNATED EVIDENCE

■ The Marshalls first argue that the trial court erred in granting summary judgment in favor of Defendants because Defendants did not specifically designate the evidence supporting their motion for summary judgment, as required by Ind.Trial Rule 56(C). The record does not support the Marshalls's argument.

Trial Rule 56(C) provides in part: "At the time of filing the motion ..., a party shall designate to the court all parts of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion.... [T]he court shall make its determination from the evidentiary matter designated to the court." "The identification of material facts and relevant evidence contained in appropriate T.R. 56(C) supporting materials through a summary judgment brief complies with the designation requirement of T.R. 56(C)." *Vogler v. Dominguez* (1993), Ind.App., 624 N.E.2d 56, *trans. denied.*[1] Here, Defendants stated in their motion for summary judgment that the "pleadings, affidavits and depositions show

that there is no genuine issue as to any material fact...." While this designation by itself lacks the required specificity, Defendants's memorandum in support of summary judgment provides the specific page references to the parts of the record containing the evidentiary matters relied upon. This is sufficient designation of the evidence for the trial court's determination.

### VALIDITY OF RELEASES

The Marshalls present arguments concerning all four releases that were signed. However, because we conclude that the TIC and Blue Springs releases are valid, we do not need to discuss the other releases. The Marshalls argue that the trial court erroneously granted summary judgment in favor of Defendants because genuine issues of material fact exist as to whether the TIC and Blue Springs releases were signed under economic compulsion or duress.

■ As a general rule, parties are permitted to agree in advance that one is under no obligation of care for the benefit of the other, and shall not be liable for the consequences of conduct which would otherwise be negligent. *LaFrenz v. Lake County Fair Board* (1977), 172 Ind.App. 389, 360 N.E.2d 605. Thus, in the absence of legislation to the contrary, it is not against public policy to enter into an agreement which exculpates one from the consequences of his own negligence. The parties have not pointed to any legislation in Indiana that prohibits scuba diving schools or private parks from entering into such contracts. The Marshalls do, however, point to an exception to the general rule that releases are not against public policy.

■ Releases will be deemed void as against public policy where there is unequal bargaining power between the parties such that the party against whom the release is to be enforced did not "knowingly and willingly" execute the release. *Id.* (citing *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276

---

**1.** We agree that the preferred method of complying with T.R. 56(C) is to set out in the motion itself a listing of the factual issues which are or are not in dispute and a specific designation to

their precise location in the record. *See Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16.

N.E.2d 144). "Knowingly" goes to the understanding of the contents of the release being signed and "willingly" goes to the freedom with which the release was signed, i.e., whether it was signed under economic or other duress or compulsion. The bargaining between the parties must be "free and open." *See LaFrenz*, 172 Ind.App. at 393, 360 N.E.2d at 608.

In *LaFrenz*, the plaintiff's decedent was killed while standing in the pit area during a demolition derby. One of the automobiles participating in the derby jumped the arena barrier and struck the decedent. In order to receive a pit pass to get into the pit area, the decedent had signed a "Waiver and Release From Liability and Indemnity Agreement." The decedent had gotten the pit pass so she could assist her husband as a mechanic. This court concluded as a matter of law that there was no unequal bargaining power between the parties and that decedent was under no compulsion, economic or otherwise, to be in the restricted pit area.

The focus of the Marshalls's argument on appeal is that, here, there is a genuine issue of fact as to whether the releases were signed "willingly" or under economic or other compulsion. The Marshalls point to the fact that when Danny signed the TIC release he had already paid for the course and invested time and effort into the course. If he did not sign the TIC release he would not be able to complete the course and would forfeit the course fee and lose the time and effort already invested.

The Marshalls make essentially the same argument as to the willingness with which they signed the Blue Springs release: They had already paid the course fee and the equipment rental fee for the dive, the dive was a necessary part of the course for certification, CDC had chosen the site for the open water dive test, and, additionally, they had driven one and one-half hour from their home to get to the open water dive test site.

The Marshalls have not presented any *facts* from which a jury could infer that the releases were signed under some form of compulsion. There is no evidence in the record that the Marshalls even considered *not* signing the releases. Nothing indicates

that Danny inquired whether his course fee would be refunded if he refused to sign the release and thus did not complete the course. Also, there is no evidence that Danny attempted to negotiate the terms of the releases because he was not willing to sign away his rights. Facts such as those might have created a question of fact for the jury regarding the willingness with which Danny signed the releases, but in the absence of facts such as those, or others to indicate Danny did not willingly sign the releases, the trial court correctly determined as a matter of law that the releases were signed willingly. In other words, there is no evidence from which a jury could conclude that the bargaining between the parties was anything other than free and open.

Further, this case is similar to *LaFrenz* in that the activity engaged in and for which the releases were signed, is recreational in nature. The record does not indicate that Danny chose to take scuba diving lessons and to participate in the open dive test in order to be a certified scuba diver for any reason other than his own personal enjoyment. He was under no compulsion by an outside source to do so. If he was not willing to release CDC and Blue Springs Park from liability, he had alternatives. He could have shopped around for an instruction course or a dive site that did not require a release, or, if one was not available, he could have chosen to forego scuba diving lessons and certification. In *Weaver*, the court stated:

> It is not the policy of the law to restrict business dealings or to relieve a party of his own mistakes of judgment, but where one party has taken advantage of another's necessities and distress to obtain an unfair advantage over him, and the latter, owing to his condition, has encumbered himself with a heavy liability or an onerous obligation for the sake of a small or inadequate present gain, there will be relief granted.

257 Ind. at 462, 276 N.E.2d at 146 (quoting *Stiefler v. McCullough* (1931), 97 Ind.App. 123, 174 N.E. 823). Based upon the record before us, this is clearly not the situation here. There is no evidence that Defendants

took advantage of a *necessity* of the Marshalls as was the case in *Weaver*. The trial court properly determined as a matter of law that the Marshalls willingly executed the releases.

*Knowingly*

■ The Marshalls allude to an argument that the releases were not signed knowingly. As for the TIC release, the Marshalls argue that there was no "real and voluntary meeting of the minds," *LaFrenz*, 172 Ind.App. at 394, 360 N.E.2d at 608 (quoting *Weaver*, 257 Ind. at 464, 276 N.E.2d at 148), because CDC did not explain the provisions of the release to Danny Marshall. As for the Blue Springs release, the Marshalls argue that it was not knowingly signed because it was not explained to them and because the emphasis was on the dangers of scuba diving relating to lung over-expansion and the "bends," requiring a decompression chamber. Thus, the Marshalls were not intending to release Blue Springs for any injuries sustained by slipping and falling on the dock. The Marshalls point to *Reuther v. Southern Cross Club, Inc* (S.D.Ind.1992), 785 F.Supp. 1339, in support of their argument that they did not intend to release Defendants for injuries sustained by slipping and falling on the dock.

In *Reuther*, the plaintiff signed up to participate in a scuba dive in the Cayman Islands. He was required to release Defendant from liability for any injuries occurring in the context of the scuba dive. Plaintiff was injured during the boat ride to the dive site when a "huge wave" hit the side of the boat. The court, applying English common law as the law applicable to the Cayman Islands, denied Defendant's motion for summary judgment. The release referred only to "the potential dangers incidental to SCUBA diving, instruction, or snorkeling." *Id.* at 1342. The release said nothing about injuries while on the dive boat and Plaintiff submitted an affidavit stating that he understood he was releasing Defendant from liability for injuries occurring in the context of the scuba dive, not the boat ride. Construing any ambiguity as to the intent to include the boat ride as incidental to the dive against Defendant, who composed the release, the court held that the "object and purpose" of the release was to waive liability for injuries incurred while SCUBA diving only, and not "for injuries that occurred on the boat ride while enroute to the dive site...." *Id.* at 1343.

■ Danny Marshall does not claim that he failed to read the releases. He released CDC for injuries occurring "as a result of engaging in or receiving instruction in [scuba diving activities] or any activities incidental thereto wherever or however the same may occur...." As the plaintiff did in *Reuther*, Danny clearly released CDC for injuries incidental to scuba diving and instruction. The Marshalls released Blue Springs for "any accidents or mishaps which may occur while scuba diving, swimming, diving or participating in any other activities...." Unlike the facts in *Reuther*, where the plaintiff was not engaging in the activity of scuba diving when injured, Danny was injured while engaged in the activity of scuba diving. He had put his mask, snorkel and fins on and he had been in the water checking his weights. He then returned to the dock and took off his fins to await further instructions. He was instructed to put his fins on again and get in the water to do the "figure four." While preparing to put his fin on, Danny slipped and fell on the dock. While the injury may not have been one normally associated in people's minds with the dangers peculiar to scuba diving, such as lung over expansion and the "bends," it was, nevertheless, an injury sustained while scuba diving. The releases clearly covered such an occurrence and the trial court properly determined as a matter of law that the Marshalls knowingly executed the release.

*Consideration*

Finally, the Marshalls "note that no consideration flowed from [CDC] to the Plaintiffs after the Student Enrollment Form and Liability Release ... was first proffered and signed on or about January 7, 1991, through August 15, 1991. Therefore, the TIC APPLICATION FORM—Limitation of Liability language is ineffective due to a lack of consideration." Brief of Appellant, p. 25. The Marshalls do not support this claim with any citation to authority or argument. Thus, this

issue has been waived. *Bank of New York v. Bright* (1986), Ind.App., 494 N.E.2d 970.

## CONCLUSION

The Marshalls have not shown that a genuine issue of material fact exists; therefore, the trial court's grant of summary judgment in favor of Defendants is AFFIRMED.

SHARPNACK, C.J., and RILEY, J., concur.