Sandra TERRY, Appellant.

v.

**INDIANA STATE UNIVERSITY and Indiana State University Board of Trustees, Appellees.**

No. 84A04–9512–CV–473.

Court of Appeals of Indiana.

May 29, 1996.

C. Joseph Anderson, Anderson & Nichols, Terre Haute, for appellant.

William W. Drummy, John Christopher Wall, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, for appellees.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Plaintiff Sandra Terry appeals from the trial court's grant of the motion for summary judgment filed by Indiana State University and Indiana State University Board of Trustees (ISU).

*ISSUES*

1. Whether the trial court erred in granting ISU's motions to strike.

2. Whether the trial court erred in granting ISU's motion for summary judgment.

*FACTS*

On June 27, 1993, Terry was a student in a motorcycle training course for beginners offered by ISU when she drove a motorcycle, provided by ISU, into a tree and broke her arm. Prior to the day of the accident, Terry executed the following form on June 14, 1993:

**INDIANA STATE UNIVERSITY INDIVIDUAL WAIVER OF LIABILITY AND MEDICAL TREATMENT AUTHORIZATION**

I/We do hereby present to Indiana State University this application for enrollment of (student's name) *Sandra Terry* enrollment in (activity) [*copy illegible*] to be conducted under the auspices of Indiana State University and do hereby waive any and all rights and claims against Indiana State University, its trustees, officers, agents, and employees, arising in or out of my participation in this class, and do further agree to indemnify and save harmless Indiana State University, its trustees, officers, agents, and employees of and from any liability whatsoever arising from injuries suffered by me as a student participant in this class.

I/We understand and agree that Indiana State University shall provide only emergency medical treatment for any injuries suffered by the undersigned student while participating in this class do hereby authorize such medical and/or surgical treatment as deemed necessary by the medical purveyor thereof to the above named minor while enrolled or participating in any activity under the auspices of Indiana State University, and I/We assume full

responsibility for all medical expenses incurred as a result of injuries suffered by the undersigned student's participation in this class.

**It is agreed that this waiver of liability is submitted to Indiana State University as an inducement to enroll the undersigned student in said class and this agreement is signed as the undersigned's free and voluntary act with full knowledge of the contents thereof.**

(S.R. at 96).

Terry also executed the following form on June 25, 1993:

### MOTORCYCLE RIDER COURSE/EXPERIENCED RIDER COURSE WAIVER, RELEASE AND INDEMNIFICATION

The undersigned participant and his or her parent or legal guardian, if the participant is under the age of 18 years, in consideration of permission to participate in the Indiana Motorcycle Operator Safety Education Program, does (do), hereby execute this waiver, release, and indemnification for himself or herself (themselves), and his or her (their) representatives, and assigns; and hereby agree(s) and represent(s) as follows:

To release the Indiana Department of Education, its members, employees, agents, representatives, and those governmental agencies and other organizations affiliated with this course from any and all liability, loss, damage, costs, claims, and/or causes of action, including but not limited to all bodily injuries and property damage arising out of participation in the course referred to above; it being specifically understood that said course includes the operation and use by the undersigned participant and others of motorcycles. The undersigned covenants not to cause any action at law or in equity to be brought, or permit such to be brought on his or her behalf, either directly or indirectly, on account of the occurrence of any of the aforesaid causes of action; and further agree(s) to indemnify the Indiana Department of Education, its employees, members, agents, representatives, and those governmental agencies and other organizations affiliated with this project, and hold them harmless for any liability, loss, damage, cost claim, judgment or settlement which may be brought or entered against them as a result of the undersigned's participation in said course; provided that in signing this document the undersigned does not waive any rights or benefits to which he or she may otherwise be entitled under any insurance obtained by the Indiana Department of Education to provide insurance coverage for participants in this course. This indemnification shall include attorney's fees incurred in negotiating any settlement. It is understood and agreed that the undersigned shall have the opportunity to consent to any such settlement, provided, however, that such consent shall not be unreasonably withheld. The undersigned further states: 1. That he or she (they) is (are) aware of the fact that the aforesaid activities may be inherently dangerous; 2. That he or she (they) assume(s) the risk of injury while participating in such activities; 3. That he or she (they) is (are) of legal age and is (are) competent to sign this Waiver, Release, and Indemnification; and 4. That he or she (they) has (have) read and understand(s) all the provisions herein contained.

**I HAVE CAREFULLY READ THIS RELEASE AND UNDERSTAND ITS CONTENTS AND VOLUNTARILY SIGN THE SAME AS MY OWN FREE ACT.**

(S.R. 97).

On January 17, 1995, Terry filed a complaint for damages against ISU claiming that Terry's injuries were "proximately caused by the negligence of the Defendants in the conduct of such course, such negligence including but not limited to failing to provide appropriate equipment and failing to provide appropriate instruction." (S.R. 4). ISU filed an answer on February 7, 1995, and a motion for summary judgment on April 25, 1995. In support of its motion, ISU designated Terry's complaint, its answer, Terry's answer to one of ISU's interrogatories,[1] and the waiver

---

1. QUESTION: 14. Do you allege that the defendant or defendants were negligent? If so, for

of liability forms noted above which were attached as exhibits one and two of Terry's deposition also filed on April 25, 1995. On May 17, 1995, Terry requested and received a motion for enlargement of time to respond to ISU's motion for summary judgment. On June 16, 1995, Terry filed a brief in opposition to ISU's motion for summary judgment designating Exhibit 1, "Contract for Personal Services Between Indiana State University Motorcycle Safety Program and the State of Indiana Department of Education Acting by and through the State Department of Administration," (R. 28), Exhibit 2, "Indiana Department of Education Motorcycle Operator Safety Education Program, Program Policy Manual," (R. 33), and Terry's deposition. On June 23, 1995, Terry supplemented her designation of evidence with her own affidavit.

On July 5, 1995, the day of the hearing on ISU's motion for summary judgment, ISU filed two motions to strike Exhibits 1 and 2, as well as Terry's affidavit. The trial court granted both motions in addition to granting ISU's motion for summary judgment.

### DECISION

Terry first claims the trial court "did not provide the Plaintiff with an adequate opportunity to respond to defense motions [to strike]," Brief of Appellant at 14, and that ISU was time barred from filing the motions. We note, however, that the record is absolutely devoid of any evidence suggesting that Terry requested more time to respond to ISU's motions than was provided by the trial court, or that Terry objected to the filing of ISU's motions to strike. Terry may appeal only those errors properly raised and preserved below. *Sharp v. Jones,* 497 N.E.2d 593, 597 (Ind.Ct.App.1986). Accordingly, Terry has waived appellate review of this issue.

Next, Terry claims the trial court erred in granting ISU's motion for summary judgment. Summary judgment is an appropriate disposition if the "designated evidentiary matter shows that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind.Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 513 (Ind. Ct.App.1994), *reh'g denied.* In determining whether there exists a genuine issue of material fact precluding summary judgment, "all doubts must be resolved against the moving party and facts set forth by the party opposing the motion must be taken as true." *Progressive Const. & Engineering Co., Inc. v. Indiana & Michigan Elec. Co., Inc.,* 533 N.E.2d 1279 (Ind.Ct.App.1989).

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Hermann, supra.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.*

As a general rule, parties are permitted to agree in advance that one is under no obligation of care for the benefit of the other, and shall not be liable for the consequences of conduct which would otherwise be negligent. *Marshall v. Blue Springs Corp.,* 641 N.E.2d 92, 95 (Ind.Ct.App.1994). Thus, in the absence of legislation to the contrary, it is not against public policy to enter into an agreement which exculpates one from the consequences of his own negligence. *Id.*

Terry first argues that "[t]he releases are void as a matter of law" because "[t]he legislature imposed statutory duties on Indiana State university and its Board of Trustees which may not be obviated by contractual connivance." Brief of Appellant at 6. Terry creates this argument by attempting to weave together various unrelated statutes, none of which separately, or in the aggregate, proclaim this particular waiver to be against public policy.

---

each defendant identify the specific acts or omissions which you allege constituted negligence. ANSWER: Yes. Subject to future discovery, all the acts and omissions which I allege constitute

negligence are contained in my Complaint for Damages.
(R. 15).

Terry first states that "[i]n order for an individual to obtain an operator license and endorsement to operate a motorcycle in Indiana, the individual must complete an approved motorcycle driver education course pursuant to I.C. 9–24–8–4." Brief of Appellant at 6. Terry's statement is misleading. Ind.Code 9–24–8–4 provides in pertinent part:

(a) Except as provided in (c) and (d), the bureau shall:

(1) issue a motorcycle operator's license; or

(2) validate an operator's, a chauffeur's, or a public passenger chauffeur's license for motorcycle operation upon a highway by endorsement:

to a person who meets the conditions in subsection (b).

(b) A person must meet at least one (1) of the following conditions to obtain a license or validation under subsection (a):

(1) Satisfactorily complete an approved motorcycle driver education and training course and pass the written test required by this section.

(2) Satisfactorily complete the written test, hold a motorcycle learner's permit for at least thirty (30) days, and satisfactorily complete the operational test.

(3) Hold a current motorcycle operator endorsement or license from any other jurisdiction and successfully complete the written test.

Citing Exhibit 1, a document entitled "Contract for personal services between Indiana State University Motorcycle Safety Program and the State of Indiana," to her brief in opposition to ISU's motion for summary judgment, Terry next claims "Indiana State University entered into a contract with the State of Indiana Department of Education to provide a motorcycle safety and education class pursuant to I.C. 20–10.1–7–14." Brief of Appellant at 6. However, there is no evidence of record that ISU entered into a contract with the State to provide motorcycle training because Exhibit 1

was stricken pursuant to the trial court's grant of ISU's motion to strike.[2] Furthermore, Ind.Code 20–10.1–7–14 essentially outlines the duties delegated to the Department of Education with respect to motorcycle training courses, including the provision that "[t]he Department may enter into contracts with regional training centers or any other sites approved by the director for the conduct of motorcycle operator safety education courses. If necessary, course sites may charge a reasonable tuition fee for the courses." The rest of I.C. 20–10.1–7–14 essentially outlines the duties delegated to the Department of Education with respect to motorcycle education courses.

Next, Terry next points out that "the Indiana Legislature assigned to Indiana State University's Board of Trustees by statute the duty to '... protect the academic community from conduct presenting a serious threat to person or property of the academic community. I.C. 20–12–1–2(c),' " and concludes that "[i]n its capacity as a contract provider of services to the Indiana Department of Education, specifically the basic motorcycle safety training course, ISU is bound by the duties established by the Legislature in I.C. 20–10.1–7–14, as well as any administrative rules or standards established by the Department of Education pursuant to that legislation." Brief of Appellant at 6.

As noted above, there is no evidence that ISU is a "contract provider." Furthermore, Ind.Code 20–12–1–2(c) actually provides:

This section shall not be construed to deny any tax exemption that a lessee would have under other laws if the lessee were the owner in fee simple of the real estate.

The provisions of I.C. 20–12–1–2(c) being wholly inapplicable to Terry's argument, we believe Terry intended to direct our attention to I.C. 20–12–1–2(a)(3) which, when cited in context, provides in pertinent part:

(a) The ... Indiana State University board of trustees ..., shall have the power and duty:

\* \* \* \* \* \*

**2.** Although the reasons why the trial court granted ISU's motion to strike Exhibit 1 are not of record, and Terry offers no explanation or argument with respect to the stricken exhibit, a review of the contract reveals several missing pages and a 1995 contract date.

(3) to govern, by lawful means, the conduct of its students, faculty, and employees, wherever the conduct might occur, to the end of preventing unlawful or objectionable acts that seriously threaten the ability of the institution to maintain its facilities or that are in violation of the reasonable rules and standards of the institution designed to protect the academic community from unlawful conduct or conduct presenting a serious threat to person or property of the academic community. We fail to understand, nor does Terry explain, how the negligence she complains of falls within the provisions of this statute. Moreover, as noted above, I.C. 20–10.1–7–14 merely delegates the responsibility for developing a motorcycle training course to the Department of Education and simply does not establish any duties for those with whom it "may enter into contracts."

In short, Terry has completely failed to establish the existence of a "statutory duty" owed her by ISU which voids, as a matter of law, the waivers she signed. Thus, Terry's reliance on *Marshall v. Blue Springs Corp.,* 641 N.E.2d 92, 95 (Ind.Ct.App.1994) and *LaFrenz v. Lake County Fair,* 172 Ind.App. 389, 360 N.E.2d 605 (1977), in support of her conclusion that because the activity for which the waivers in each case were signed was recreational, "the Court of Appeals appears to embrace the principle that an agreement which exculpates a party from the consequences of its negligence in performing a duty established by legislation violates public policy and is therefore void," Brief of Appellant at 8, is misplaced because whether or not we agree with her conclusion, she has failed to identify ISU's "duty established by legislation" in the first place.

■ Next, Terry claims "[t]he releases are void as a matter of public policy." Brief of Appellant at 9. Furthermore, she asserts that "Indiana State University is a monopolistic provider of a necessary public service. Its special position of public trust and superior knowledge gives it superior bargaining power over its students." Brief of Appellant at 9. In support of her contention, she relies on *LaFrenz, supra,* wherein this court quoted the following criteria from *Winterstein v.*

*Wilcom,* 16 Md.App. 130, 293 A.2d 821 (1972), "for determining whether particular contracts are affected with the public interest:"

Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*LaFrenz,* 360 N.E.2d at 608. Terry applies the foregoing criteria to the circumstances of her case as follows:

Application of the above analysis to the controversy now before this Court unquestionably results in a finding that the transaction in question is fraught with public interest. Indiana's legislature deems both education and public safety as activities suitable for public regulation. Presumably these services are of great importance to the public. Motorcycle operator safety education is a practical necessity for some members of the public, i.e. those individuals who intend to be licenses by this state to operate a motorcycle. ISU is required by law to accept anyone who en-

rolls for the class who is eligible. ISU is the only provider of an approved motorcycle operator education and safety course in the geographic area surrounding Terre Haute and accordingly holds a virtual monopoly on this service. ISU confronts the general public with a standardized adhesion contract of exculpation and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against its negligence or the negligence of its agents. Finally, as a result of this transaction Ms. Terry placed her personal safety under the complete control of ISU's course instructors. Accordingly, this Court should declare void the releases upon which the defendant's place their reliance.

Brief of Appellant at 13.

After a review of the evidence before the trial court, we cannot accept Terry's assertions because her analysis consists of little more than unsupported generalizations and conclusions. For example, as noted, *supra*, statutory law does not require that a person take and pass a training course before obtaining a license to drive a motorcycle. Furthermore, because Terry's Exhibit 1 was stricken, there is no evidence that ISU is required to enroll all eligible applicants for the training course. Similarly, there is absolutely no evidence, stricken or otherwise, indicating that ISU "holds a virtual monopoly" in providing motorcycle training. Moreover, Terry does not point to any evidence suggesting that she, in fact, had no opportunity to "obtain protection" for a reasonable fee.

Finally, Terry argues "[t]he releases are unconscionable contracts of adhesion, unsupported by consideration and are therefore unenforceable." Brief of Appellant at 13. In support of her contention, she cites the following passage from *Weaver v. American Oil Co.*, 257 Ind. 458, 461–462, 276 N.E.2d 144, 146 (1971):

> When the weaker party, in need of the good or services, is not in a position to shop around for better terms, either because the author of the standard contract has a monopoly or the other competitors use the same contract, the parties are not in an equal bargaining position and application of the doctrine of unconscionability is appropriate.

*Id.* at 463, 276 N.E.2d 144. Thereafter, Terry concludes:

> When ISU, through its instructors, confronted Sandra Terry with standardized waiver of liability and indemnity forms, before allowing her to take a course designed by the legislature to promote public safety and for which she paid valuable consideration, ISU gave her nothing in the exchange beyond the right to be victimized by its agents with apparent impunity.

Brief of Appellant at 14. As noted above, no evidence exists in this record indicating that ISU is the only provider of the motorcycle training course in her geographic area. Furthermore, there is no evidence Terry was not free to shop around for better terms or that she occupied a weaker bargaining position than did ISU. In fact, Terry's deposition reveals that she only took the ISU course "for recreation," (S.R. 91), at the request of a friend who was already enrolled, and that she had no plans to actually purchase a motorcycle or obtain a license to drive one. As Terry has failed to direct our attention to any evidence indicating the waivers constitute "unconscionable contracts of adhesion," this argument fails as well.

The trial court is affirmed.

RILEY and BAKER, JJ., concur.