**Lawrence E. CLANTON,**
**Appellant–Plaintiff,**

v.

**UNITED SKATES OF AMERICA,**
**Appellee–Defendant.**

No. 49A02–9703–CV–140.

Court of Appeals of Indiana.

Oct. 27, 1997.

Richard L. Brown, Brown Hastings & Clutter, Indianapolis, for Appellant–Plaintiff.

Mary K. Reeder, Riley Bennett & Egloff, Indianapolis, for Appellee–Defendant.

## OPINION

BAKER, Judge.

Appellant-plaintiff Lawrence E. Clanton appeals the trial court's grant of summary judgment in favor of appellee-defendant United Skates of America (USA). Specifically, Clanton argues that the trial court erroneously concluded that the liability release he signed precluded him from recovering from USA for his injuries as a matter of law. Clanton also argues that USA's motion for summary judgment did not encompass his claim of negligent maintenance and design of the skating rink and, therefore, the trial court erred in granting summary judgment on this issue.

### FACTS [1]

USA owns and operates a roller skating facility in Indianapolis. On March 24, 1992, Clanton, an experienced roller skater, decided to skate at USA. Upon entering the facility, Clanton was given an assumption of risk and complete release form to read and

1. Oral argument was held on October 15, 1997, in the Decatur County Courthouse in Greens-burg, Indiana.

sign. In pertinent part, the form provided as follows:

> In consideration of permission to use, today and on all future dates, the property, facilities, and services (Facilities) of United Skates of America, Inc. (USA), I, the undersigned (Skater), hereby expressly agree:
>
> 1) THAT roller skating is a participation sport and I am fully aware of the risks and hazards involved in or arising from my use of or presence upon the facilities. I hereby assume any and all risks involved in or arising from my use or presence upon the facilities, including, without limitation, the risk of bodily injury resulting from collision between myself and another person or stationary object or the negligent or deliberate act of another person;
>
> 2) TO RELEASE USA and any of its successors, assigns, affiliates, officers, directors, employees and agents from, and AGREES NOT TO SUE ANY OR ALL OF THEM on account of or in connection with any claims, causes of action, injuries, damages, costs or expenses arising out of Skater's use of or presence upon the Facilities, including, but not limited to, those based on bodily injury, whether or not caused by the negligence or other fault of USA;
>
> \*       \*       \*       \*       \*       \*
>
> 6. I HAVE READ AND UNDERSTOOD THIS AGREEMENT. I UNDERSTAND THAT BY MAKING AND SIGNING THIS AGREEMENT, I SURRENDER VALUABLE RIGHTS, INCLUDING, BUT NOT LIMITED TO, MY RIGHT TO SUE. I DO SO FREELY AND VOLUNTARILY.

Record at 34. In addition to the release, USA provided each skater with a list of customer rink rules, which specifically prohibited fast skating and pushing. USA also reserved the right to evict any skater who did not follow the rules. After signing the form, Clanton was permitted to enter the rink.

Over the next two years, Clanton regularly skated at USA's facilities. Each time he visited the facility, he was given a new re-lease form to sign. However, Clanton either signed the additional forms with a false name or did not give his complete signature on the form. R. at 39–42.

On June 10, 1994, while Clanton was skating at USA, he was struck by another skater who was skating too fast, causing Clanton to fall into a wall and injure his arm. As a result, on August 9, 1995, Clanton filed a complaint against USA, alleging that his injuries were caused by USA's negligence in failing to maintain a safe skating environment and the negligent maintenance and design of the rink. Thereafter, USA filed a motion for summary judgment, arguing that Clanton had released it from liability for his injuries. Following a hearing on October 21, 1996, the trial court granted USA's motion for summary judgment. Clanton now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing the propriety of the grant of summary judgment, we apply the same standard as the trial court and resolve any doubt as to any fact or inference to be drawn therefrom in favor of the party opposing summary judgment. *Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1065 (Ind. Ct.App.1995), *trans. denied.* Summary judgment is appropriate only if the designated evidentiary material shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The party appealing the grant of summary judgment has the burden of persuading the court on appeal that the trial court's ruling was improper. *Jordan v. Deery,* 609 N.E.2d 1104, 1107 (Ind.1993).

### II. Enforceability of the Release

Clanton contends that the trial court erroneously concluded that the release was valid and precluded him from recovering from USA as a matter of law. Specifically, he argues that the release is not enforceable for the following reasons: (1) USA did not present any evidence that he knowingly and willingly signed the release; (2) the release contravenes public policy by limiting a person's

ability to recover damages for personal injuries; and (3) the release does not preclude him from recovering for damages caused by USA's breach of its duty to enforce its rules and provide a safe skating environment.

As a general rule, Indiana courts permit parties to agree in advance that one is under no obligation for the care of another and shall not be liable for the consequences of conduct which would otherwise be negligent. *Marshall v. Blue Springs Corp.*, 641 N.E.2d 92, 95 (Ind.Ct.App.1994). Therefore, in absence of legislation to the contrary, it is not against public policy to enter into an agreement which exculpates one from the consequences of his own negligence. *Id.* However, exceptions to this general rule exist when there is unequal bargaining power between the parties such that the party against whom the release is to be enforced did not "knowingly and willingly" execute the release or when there is evidence of fraud or misrepresentation. *Shumate v. Lycan*, 675 N.E.2d 749, 752 (Ind.Ct.App.1997), *trans. denied.* "Knowingly" refers to whether the party who signs the release understands its contents, while "willingly" refers to whether the release was signed under economic or other duress. *Marshall*, 641 N.E.2d at 96.

### A. Knowingly and Willingly

We first address Clanton's contention that the release is unenforceable because there was no evidence that he knowingly and willingly executed the release. Specifically, Clanton argues that an exculpatory release is only valid in Indiana if the party seeking to enforce the release presents evidence that it explained the contents of the release to the other party or that the other party understood the consequences of signing the release. Because USA failed to present any evidence in this regard, Clanton contends that the release is unenforceable. Alternatively, he argues that a question of fact exists as to whether he knew and understood the contents of the release.

In support of his argument that USA had the burden of proving that he understood the release, Clanton relies on *Weaver v. American Oil Co.*, 257 Ind. 458, 464, 276 N.E.2d 144, 148 (1971), in which our supreme court

stated that the party seeking to enforce a liability release "has the burden of showing that the provisions were explained to the other party." Clanton fails to recognize, however, that this burden only applies when the other party has established that the contract is unconscionable because the enforcing party possesses such superior bargaining power that the contract is signed under economic or other duress. *Id.* As our supreme court stated:

> When a party can show that the contract, which is sought to be enforced, was in fact an unconscionable one, due to a prodigious amount of bargaining power on behalf of the stronger party, which is used to the stronger party's advantage and is unknown to the lesser[ ] party, causing a great hardship and risk on the lesser party, the contract provision, or the contract as a whole, if the provision is not separable, should not be enforceable on the grounds that the provision is contrary to public policy. The party seeking to enforce *such a contract* has the burden of showing that the provisions were explained to the other party . . . .

*Id.* (emphasis added).

Here, Clanton has not designated any evidence, and nothing in the record indicates, that USA possessed vastly superior bargaining power and unfairly compelled Clanton to sign the release. Rather, Clanton was skating at USA for purely personal enjoyment, not out of any economic or other need. Further, if Clanton was not willing to release USA from liability, he could have searched for other facilities which did not require the release or could have foregone skating altogether. We fail to see how a contract to engage in a voluntary and purely recreational activity could be unconscionable. Under these circumstances, we conclude that USA was not required to show that it explained the contents of the release to Clanton or that he understood its consequences.

Similarly, we reject Clanton's argument that a question of fact exists as to whether he knew or understood the contents of the release. Under Indiana law, a person is presumed to understand the documents

which he signs and cannot be released from the terms of a contract due to his failure to read it. *Fultz v. Cox,* 574 N.E.2d 956, 958 (Ind.Ct.App.1991); *see also Shumate,* 675 N.E.2d at 753 (party's failure to read exculpatory release was attributable to his own neglect and did not render release unenforceable). Here, Clanton admits that he signed the release. Further, nothing in the designated evidence indicates that Clanton was incapable of reading or that he required or requested assistance from USA to explain the release before he signed. Although Clanton asserts that he did not understand the terms of the release, the record reveals that Clanton testified, in his deposition, that he often signed false names or only a portion of his name to subsequent release forms because he did not want to sign away his "right[s] if [he] got hurt or something." R. at 41. This statement clearly indicates that Clanton understood the consequences of signing the release. Under these circumstances, we conclude that Clanton knowingly and willingly signed the release as a matter of law.

### B. Public Policy

Clanton also argues that the release is unenforceable because it contravenes public policy. Specifically, he argues that IND.CODE § 26-1-2-719(3) prohibits the limitation of damages for personal injuries. Because the release in the present case precludes him from recovering from USA for his injuries, Clanton contends that the release constitutes a limitation on personal injury damages and, therefore, is "prima facie unconscionable." Appellant's Brief at 10.

■ As Clanton concedes, however, I.C. § 26-1-2-719 is limited, by its terms, to injuries arising from the sale of consumer goods. Here, Clanton's injuries arose through his use of USA's facilities, not from the sale of a consumer good. Thus, the statute is inapplicable in the present case. *See Insul–Mark Midwest, Inc. v. Modern Materials, Inc.,* 612 N.E.2d 550, 553 (Ind.1993) (an agreement for the performance of services is not subject to sales provisions of the Uniform Commercial Code).

■ Moreover, this court has repeatedly upheld the validity of exculpatory releases in connection with a voluntary recreational activity, even though it prevents the injured party from recovering for his injuries. *See, e.g., Shumate,* 675 N.E.2d 749 (enforcing exculpatory release with regard to horseback riding); *Terry v. Indiana State University,* 666 N.E.2d 87 (Ind.Ct.App.1996) (enforcing release in connection with a motorcycle training course); *Marshall v. Blue Springs Corp.,* 641 N.E.2d 92 (Ind.Ct.App.1994) (upholding exculpatory release in connection with scuba diving course); *Moore v. Sitzmark Corp.,* 555 N.E.2d 1305, 1309 (Ind.Ct.App.1990) (enforcing release signed by skier, precluding her from maintaining negligence action against seller for negligently adjusting her ski bindings). To hold that this release is per se unenforceable on the basis that it limits an individual's recovery for his injuries, as Clanton urges us to do, would invalidate all exculpatory releases connected with a recreational activity. Such a result would dramatically raise the cost of participation in these activities and severely limit the public's recreational opportunities. Given that our legislature has clearly expressed its desire to encourage recreational activities by limiting the liability of landowners who open their property for recreational use by the public, *see* IND.CODE § 14-22-10-2, and Clanton's failure to cite any legislation which specifically prohibits such a release, we cannot conclude that this exculpatory release violates public policy.

### C. Breach of Duties

Next, Clanton argues that even if the release is valid, it does not preclude him from bringing an action against USA to recover for his injuries. Specifically, Clanton argues that USA assumed a duty, through its customer rink rules, to provide a safe skating environment regardless of the release.

■ Initially, we note that Clanton has failed to cite any authority which supports his contention or explain why the release would not cover USA's alleged breach of its assumed duties. The failure to present a cogent argument results in waiver on appeal. *Widmeyer v. Faulk,* 612 N.E.2d 1119, 1122 n. 1 (Ind.Ct.App.1993).

Notwithstanding waiver, we find that the release covers any potential breach of duty by USA. The interpretation of an exculpatory release, like any other contract document, is determined by the terms of the particular instrument, in light of all the facts and circumstances. *OEC–Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314 (Ind.1996). Here, the release specifically states that the skater assumes all risks involved in or arising from his use or presence upon the facilities, including the risk of bodily injury resulting from a collision or the negligent or deliberate act of another person. Further, the release provides that the skater agrees to release USA from liability for any injury which arose from his "use of or presence upon the Facilities, including, but not limited to, those based on bodily injury, whether or not caused by the negligence or other fault of USA." R. at 34. This language clearly encompasses any liability arising from USA's alleged breach of duty to enforce its rules and provide a safe skating environment. Thus, we find no error.

### III. Negligent Maintenance and Design

Finally, Clanton argues that, even if the release is valid, his claim for negligent maintenance and design of the rink survives because USA did not raise this issue in its motion for summary judgment. Specifically, Clanton contends that USA only addressed his injuries as they pertained to his "use of the facilities" in its motion for summary judgment and, therefore, conceded that his maintenance and design claim was a matter for the jury. We disagree.

In the present case, USA repeatedly asserted in its summary judgment motion, that Clanton had no cause of action against USA. Specifically, USA argued that the assumption of risk form "operates to release United Skates of America from all liability to [Clanton] asserted in this action." R. at 25. Notwithstanding Clanton's argument to the contrary, we find that USA's summary judgment motion was sufficient to raise his negligent maintenance and design claim.

Moreover, we note that the release necessarily encompassed any claim pertaining to the negligent design and maintenance of the rink. As previously stated, the release applied to any injuries arising from the skater's "use of or *presence upon* the facilities." R. at 34 (emphasis added). Thus, the trial court did not err in granting summary judgment on Clanton's claim for negligent maintenance and design of the rink.

Judgment affirmed.

ROBERTSON and NAJAM, JJ., concur.